IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER YVELLEZ,<br><br>Petitioner,<br><br>vs.<br><br>SCOTT CROWTHER,<br><br>Respondent. | MEMORANDUM DECISION & ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS<br><br>Case No. 2:16-CV-953-CW<br><br>Judge Clark Waddoups |

THIS MATTER IS BEFORE THE COURT on Petitioner Christopher Yvellez's petition for a writ of habeas corpus. 28 U.S.C.S. § 2254 (2018). The Court has carefully considered the parties' arguments and all relevant law. Now being fully advised, the Court rules that Petitioner's petition must be dismissed as untimely. *Id*. § 2244(d)(1).

## BACKGROUND

Petitioner was sentenced on July 31, 2008, then moved to withdraw his guilty plea on a forcible-sexual-abuse charge. That motion was denied on November 3, 2008; Petitioner did not appeal. Petitioner never sought state post-conviction relief. Petitioner filed his federal petition here on September 12, 2016, nearly eight years after his motion to withdraw his plea was denied.

Petitioner's investigator interviewed Brittany Lamson on June 26, 2015. Her signed statement is attached to his petition. Petitioner contends that Lamson's statement is newly discovered evidence showing that the sexual encounter at issue was consensual and thus he is actually innocent. He further argues that--based on equitable tolling principles--his lack of knowledge about his litigation and his mental illness excuse his untimely filing of this petition. The Court rejects these arguments.

1

# ANALYSIS

Federal statute imposes "a 1-year period of limitation . . . to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C.S. § 2244(d) (2018). As to Petitioner's claim here that his plea was not knowing and voluntary, the period of limitation ran from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* That occurred here on December 3, 2008, thirty days after the state district court denied Petitioner's motion to set aside the plea (the deadline Petitioner missed for appealing the denial). *See* Utah R. App. P. 4 ("[T]he notice of appeal . . . shall be filed . . . within 30 days after the date of entry of the judgment or order appealed from."). Therefore, Petitioner would have had until December 3, 2009 to file his federal petition, excepting applicable tolling. This federal petition was not filed until September 12, 2016--almost seven years after the limitation period expired.

As to his claim based on newly discovered evidence, Petitioner claims his petition is timely under § 2244(d)(1)(D), which permits claims based on newly discovered evidence to be brought within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C.S. § 2244(d)(1)(D) (2018). However, the date upon which the "newly discovered evidence" was allegedly found was June 26, 2015. Again, this federal petition was not filed until September 12, 2016--almost three months after the limitation period expired.

## 1. Statutory Tolling

Because Petitioner never filed a state post-conviction application, statutory tolling does not apply here. 28 *id*. 2244(d)(2) ("The time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

## 2. Equitable Tolling

Petitioner argues that he is entitled to equitable tolling, contending that (a) he did not realize until 2010 that his motion to set aside the plea was denied and he suffers from mental illness; and (b) he is actually innocent, based on the Lamson statement and his alleged physical inability to carry out the crime.

The Court addresses whether the circumstances underlying these arguments trigger equitable tolling to save Petitioner from the limitation period's operation. "Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. U.S. Dist. Court*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted). Such situations include times "'when a prisoner is actually innocent'" or "'when an adversary's conduct--or other uncontrollable circumstances--prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period.'" *Stanley v. McKune*, No. 05-3100, 2005 U.S. App. LEXIS 9872, at *4 (10th Cir. May 23, 2005) (quoting *Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted)). And, Petitioner "has the burden of demonstrating that equitable tolling should apply." *Lovato v. Suthers*, No. 02-1132, 2002 U.S. App. LEXIS 14371, at *5 (10th Cir. July 15, 2002) (unpublished). Against the backdrop of these general principles, the Court considers Petitioner's specific arguments.

### a. Uncontrollable Circumstances

Petitioner asserts that his lateness should be overlooked because he lacked (i) immediate knowledge of the status of his motion to withdraw his plea and (ii) mental capacity to pursue litigation. Petitioner has "failed to elaborate on how these circumstances" affected his ability to bring his petition earlier. *Johnson v. Jones*, No. 08-6024, 2008 U.S. App. LEXIS 8639, at *5 (10th Cir. April 21, 2008) (order denying certificate of appealability). For instance, he has not specified how, between December 3, 2008 and December 3, 2009, he was continually and thoroughly thwarted by uncontrollable circumstances from filing. Nor has he detailed who and what in particular would simply not allow him to file. He also does not hint what continued to keep him from filing even in the almost seven years beyond the limitation period or how extraordinary circumstances eased to allow him to file this habeas-corpus petition on September 12, 2016. Such vagueness is fatal to his contention that extraordinary circumstances kept him from a timely filing.

Further, it is well settled that "'ignorance of the [litigation], even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (citation omitted). And Petitioner admittedly became aware of the denial of his motion in 2010, yet this case was not filed until September 12, 2016. There are about six years unaccounted for by Petitioner.

And as to mental disability, "[e]quitable tolling of a limitations period based on mental incapacity is warranted only in exceptional circumstances that may include an adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not capable of pursuing his own claim because of mental incapacity." *Reupert v. Workman*, 45 F. App'x 852, 854 (10th Cir. 2002) (unpublished) (quotations omitted); *see also Rantz v. Hartley*,

4

577 F. App'x 805, 810 (10th Cir. 2014) (unpublished) ("[F]ederal courts equitably toll the limitations period only when there is a severe or profound mental impairment, such as resulting in institutionalization or adjudged mental incompetence.") (citing *Fisher v. Gibson*, 262 F.3d 1135, 1143, 1145 (10th Cir. 2001)). Indeed, "'mental impairment is not *per se* a reason to toll a statute of limitations.'" *Rantz*, 577 F. App'x at 810 (quoting *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009)); *see also Saenz-Jurado v. Colorado*, 329 F. App'x 197, 199 (10th Cir. 2009) (rejecting mental illness as basis for equitable tolling when Petitioner's "allegations on this point are conclusory and lack support in the record"). It is important to note that the Tenth Circuit "'has yet to apply equitable tolling on the basis of mental incapacity.'" *Rantz,* 577 F. App'x at 810 (quoting *McCall v. Wyo. Att'y Gen.*, 339 F. App'x 848, 850 (10th Cir. 2009)). Finally, "'it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.'" *Id*. at 811 (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)).

Petitioner has not met his burden here; in other words, he has not specified any of these exceptional circumstances and linked such circumstances to actual dates and lack of mental capacity. He has not even hinted at an adjudication, institutionalization, or evidence that, between December 3, 2008 and September 12, 2016, in particular, he suffered from such mental incapacity that it was *impossible* for him to pursue habeas claims. He has not explained how he was able to file a habeas case on September 12, 2016, but was not able to during the entire running of the period of limitation and 2,475 days beyond. *See Sampson v. Patton*, 598 F. App'x 573, 575-76 (10th Cir. 2015) (denying equitable tolling based on assertion of mental illness when Petitioner did not specify or provide evidence of timeline of mental incapacitation); *Rawlins v. Newton-Embry,* 352 F. App'x 273, 275-76 (10th Cir. 2009) (unpublished) ("[Petitioner] does not

provide a date or even a month to narrow the time frame--she does not state when this nervous breakdown began, how long it lasted, or describe her level of impairment during this period."); *Brown v. Dinwiddie*, 280 F. App'x 713, 715 (10th Cir. 2008) (unpublished) (rejecting equitable tolling when lack of specific timeline linking mental illness to inability to pursue habeas claims).

### b. Actual Innocence

Finally, the Court addresses Petitioner's contention that the period of limitation should be tolled because he is actually innocent. Petitioner's contention rests on two assertions: (i) that Lamson's statement proves that the sexual encounter at issue was consensual; and, (ii) that medical evidence showed that he was physically incapable of sexually assaulting the victim.

"[T]o claim actual innocence a petitioner must present new, reliable evidence that was not presented at trial. Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Rose v. Newton-Embry*, No. 05-6245, 2006 U.S. App. LEXIS 22713, at *4-5 (10th Cir. Sept. 5, 2006) (unpublished) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)), *cert. denied*, 127 S. Ct. 2039 (2007). Further, this evidence must "affirmatively demonstrate[ the petitioner's] innocence," not just "undermine the finding of guilt against him." *Green v. Kansas*, No. 06-3118, 2006 U.S. App. LEXIS 20046, at *8 (10th Cir. Aug. 3, 2006) (quoting *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (internal citations & quotations omitted)). After presenting such evidence, a petitioner must then "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'" *See Rose*, 2006 U.S. App. LEXIS 22713, at *5 (quoting *Schlup*, 513 U.S. at 329). Such evidence is so very rare, though, that "'in virtually every case, the allegation of actual innocence has been summarily rejected.'" *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted).

### i. Lamson's Unsworn Statement

• **This is not new evidence.**

First, there is no new evidence here. Petitioner apparently knew Lamson was in another room when the assault took place, but did not seek her out as a witness. His admitted rationale for not seeking

6

her out is that, "[a]t the time [he] was arrested . . . and convicted, he did not know that . . . Lamson was available or willing to cooperate in his case as a witness." (Petition, Doc. No. 1, at 13.) He goes on to assert that "Lamson was a close family friend of the alleged victim and seemed to have been supporting the alleged victim in the 2008 arrest." (*Id*.) Here, we have an unsworn statement--which is a red flag on its own (i.e., this is not even admissible evidence)--from a person Petitioner knew was onsite during the crime. *See Boyd v. Allbaugh*, No. CIV-15-1236-HE, 2016 U.S. Dist. LEXIS 52162, at *23-24 (W.D. Okla. Mar. 24, 2016) (adopted report and recommendation) (concluding that, when affiant stated he grew to believe different person committed crime upon "reading court papers" after conviction, this failed to show "evidence is newly discovered, admissible, or sufficient to establish Petitioner's actual innocence"); *Bishop v. Patton*, No. CIV-14-1002-R, 2015 U.S. Dist. LEXIS 94621, at *17-18 (W.D. Okla. June 25, 2015) ("Because these factual allegations stem from Petitioner's personal experience around the time of the [crime], they cannot be characterized as newly discovered evidence."); *Sullivan v. Rios*, No. CIV-15-0067-M, 2015 U.S. Dist. LEXIS, at * (W.D. Okla. June 12, 2015) (adopted report & recommendation) (rejecting actual innocence claim when both petitioner and affiant had knowledge of "newly discovered evidence" since date of crime and "[t]hus, 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence,' was not . . . the date of the affidavit, but instead . . . the date of the [crime]'" (quoting *Craft v. Jones*, 435 F. App'x 789,791 (10th Cir. 2011))).

• **It is not more likely than not that no reasonable juror would have convicted Petitioner in light of Lamson's statement.**

*McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), held that an actual innocence claim may constitute an exception to AEDPA's statute of limitations, though even when it does, the timeliness of the petitioner's claim remains relevant to the claim's credibility. But this "actual-innocence gateway" that circumvents AEDPA's limitations period is available only when a petitioner can show "'that it is more likely than not that no reasonable juror would have

7

convicted him in the light of the new evidence.'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner argues that the Lamson statement satisfies this stringent standard by simply asserting, without analysis, that it does.

The Court takes the Lamson statement at face value and, just for purposes of this Order, assumes that Petitioner could produce Lamson at an evidentiary hearing where she would offer the same testimony he attaches to his petition. Nonetheless, the Court concludes that the Lamson statement does not satisfy the requirements for an actual innocence claim.

Lamson's complete handwritten statement says:

> [Victim] was a friend of the family for a while. I met [Petitioner] by my friend Kyra (Kikki). [Victim] and [Petitioner] was dating an had intercourse before the Rape Charge. One time was when me and Kyra were planning our weddings together. Me and Kyra heard them and we both told them to keep it down. I haven't had any connection with [Victim] since [Victim] and [Petitioner] broke up and [Petitioner] went to jail. [sic]

From this, Petitioner asserts that Ms. Lamson "witnessed the event in question and that there had been consensual sexual relations between the alleged victim and Petitioner." (Mem. in Supp. of Pet., doc. no. 1-1, at 13.) Petitioner merely repeats this assertion without any additional elaboration or argument in opposing the motion to dismiss. The Court concludes that Petitioner both overstates and mischaracterizes the evidence and that it comes nowhere near satisfying the high standard of *McQuiggin* and *Schlup*.

Lamson says only that she heard (what she interpreted to be) sexual intercourse between Petitioner and the victim and requested lower volume. She does not even opine that the sounds were the sounds of consensual sex. There are a number of reasons why a jury may have disregarded or weighed against such testimony: For one thing, the jury could have questioned Lamson's credibility and relevance as a witness or weighed other evidence more heavily. For

another, a sound can be construed many different ways; without the corroboration of other information, there is no way for Lamson, or a factfinder listening to Lamson's account, to know for sure what the sound indicates.

This being all the evidence Petitioner offers to support his actual innocence claim--and his related attempt to circumvent the federal statute of limitations--the Court concludes that he has failed to satisfy his burden. It can hardly be said "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). Indeed, it is quite possible that this evidence would have made no difference whatsoever.

### ii. Petitioner's Physical Limitations

Petitioner knew when he pleaded guilty whether physical limitations made it "impossible" for him to carry out a sexual assault. He chose not to take evidence of those limitations before a factfinder to defend himself on the charge. It is axiomatic that he is now foreclosed from arguing any evidence that he chose not to present in a trial. Any assertion of factual innocence must also be supported with new evidence, which again Petitioner has not provided.

### CONCLUSION

Petitioner's habeas petition is untimely. And Petitioner has not met his burden of showing that--during the running of the federal period of limitation and beyond--he faced extraordinary circumstances that stopped him from timely filing or took specific steps to "'diligently pursue his federal claims.'" *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008). Nor has he validly asserted his actual innocence. Petitioner thus has not established a basis for equitable tolling.

**ORDER**

**IT IS ORDERED that:**

(1) Respondent's motion to dismiss is **GRANTED**. (Doc. No. 8.) This federal habeas petition was filed past the period of limitation and neither statutory nor equitable tolling rescue the delay from the limitation period's operation.

(2) A certificate of appealability is **DENIED**.

(3) The Clerk of the Court is directed to **CLOSE** this action.

DATED August 24, 2018.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge